(104 So. 220)

### JACKSON v. STATE.   (6 Div. 251.)

(Supreme Court of Alabama.   Jan. 28, 1925. Rehearing Denied May 14, 1925.)

**1. Criminal law ⬩1086(10)—Order for special venire need not appear in record, when no questions are raised nor exceptions thereto presented by bill of exceptions.**

Code 1907, § 6256, as amended by Acts 1915, p. 708, does not require that order for special venire appear in record on appeal, when no questions are raised nor exceptions thereto presented by bill of exceptions.

**2. Homicide ⬩269—Evidence of corpus delicti held sufficient for jury.**

In murder prosecution, evidence *held* sufficient to take question of corpus delicti to jury.

**3. Criminal law ⬩407(1)—Evidence of accusations not denied by defendant held relevant.**

In murder trial, evidence of statement to defendant that she and others named killed deceased, and that she did not deny it, but asked accuser why she did not tell it before if she knew anything defendant had done about killing,' *held* relevant; weight and credibility being for jury.

**4. Homicide ⬩282—Guilt held for jury on conflicting evidence.**

Defendant's guilt of first degree murder *held* for jury on conflicting evidence.

**5. Criminal law ⬩814(1)—Charge that it is better for many guilty ones to escape than for one innocent man to suffer held properly refused.**

Charge in murder case that it is policy of law that it is better for a thousand guilty ones to go unwhipped than for one innocent man to suffer *held* properly refused as inapplicable to evidence.

Appeal from Circuit Court, Jefferson County; H. P. Heflin, Judge.

Pearl Jackson was convicted of murder in the first degree, and she appeals. Affirmed.

Charge 5, refused to defendant, is as follows:

"(5) The court charges the jury that it is the policy of the law that it is better for a thousand, guilty ones to go unwhipped of justice than that one innocent man should suffer."

Thos. J. Roe and S. Henderson, both of Birmingham, for appellant.

Briefs of respective counsel on original hearing did not reach the Reporter.

Harwell G. Davis, Atty. Gen., for the State.

MILLER, J.   The defendant, Pearl Jackson, was indicted, tried, and convicted for murder in the first degree—killing John Robert Turner. Her punishment was fixed by the jury at death.

[1] The order of the court fixing May 26, 1924, for the trial appears in the record, but the order of the court for the special venire does not appear therein, and no necessity exists therefor, and the statute does not require it, when, as in this case, no questions are raised and no exceptions thereto appear presented by the bill of exceptions. Section 6256, Code .1907, as amended Acts 1915, p. 708; Paitry v. State, 196 Ala. 598, 72 So. 36.

The defendant objected to several questions propounded by the state to its witnesses. The court overruled the objections to each question, and the defendant duly excepted to each ruling. The witnesses answered the questions. We have examined these questions and the answers of the witnesses to them in consultation, and find no error committed by the court therein that was prejudicial to the defendant, and no necessity exists for discussing any, except one, of them in this opinion.

[2] The deceased left his home about 7:30 p. m. January 6, 1923, with four $1 bills in his pocket. Before 10 o'clock p. m. he was found in front of a negro house, occupied by Lillie Bell, in an alley. His head was near the steps; the skull having been crushed with a blunt instrument. There was blood on the floor in the room. His hands were tied over his body with a window cord rope. Lillie Bell was lying near by, her body beaten, unconscious, and a wound in her head. The deceased died almost immediately from the wound in the head, and Lillie Bell became insane and died. There was a card and small change on the ground near his person. This negro house was in Fifth alley in the city of Birmingham.

The defendant and one Odell Jackson were not married, but lived together at that time in a room in the house with others, four, five, or six blocks away from the house occupied by Lillie Bell in the same alley. That night defendant, Odell Jackson, and others were gambling at this house where they resided. Odell "got broke" in the game, and in talking to the defendant said, "Let's go out skulling and get these nigger women with these white men, * * * nigger whores with these white men;" and defendant said, "All right." Odell said, "Wait a minute," and. he reached back in an old trunk, got this rope and put it in his pocket; and defendant said, "Let's go up to big head Lillie Bell's house." The cord or rope Odell placed in his pocket was similar to the one tied to the hands of the deceased and intro-

---

⬩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

duced in evidence. The defendant, Odell, and probably others, then left. About 1 or 2 o'clock that night defendant, Odell, and others returned, and one witness testified that Odell said to defendant, "I think we got that white s. o. b., cause I seen his brains laying on the door steps," and Pearl (defendant) replied "If we do 'this well again, let's go out again." They divided the money and counted one, two, three, four, and five, and said, "You take this, and I take that."

Mary Frances Sanders testified she went to the toilet the next morning in the rear of this house where defendant resided and found an ax there with blood on it. She told Odell to come and move the ax, and he moved it, and said to witness, "If you ever say anything about this ax, we got your water on," and defendant then said to her, "Pretty Mr. Jackson [who is Odell] will stamp your brains out." The foregoing is some of the evidence and its tendency introduced by the state.

The evidence for the state, if believed, is sufficient to authorize the conclusion by a jury, beyond a reasonable doubt, that an offense has been committed. The corpus delicti is sufficiently established by the evidence for the consideration of the jury. Hill v. State, 207 Ala. 444, 93 So. 460; May v. State, 209 Ala. 72, 95 So. 279.

[3] Some time after the homicide was committed, defendant and Mary Frances Sanders, under theory of the state, had a conversation, and Clara Jordan heard it; the three persons being present. The state offered to prove this conversation by Clara Jordan for the purpose of showing "an accusation or a statement made against this defendant, which she did not deny." The defendant objected to the question, calling for the conversation and the accusation. The court overruled the objection, and the defendant duly excepted. Clara Jordan testified the conversation was as follows:

"Mary Frances told Pearl, say—Pearl Jackson and Odell, and a fellow by the name of Garfield, and Foots, killed Lillie Bell and that white man in Fifth alley; and said Pearl Jackson put on a man's coat and went and done the killing, and then come back and divided the money up; and they got a gun off of him, and they taken the gun and pawned it; and said they had the ax to show that they had killed him, and that blood was on it. Pearl went over to the window in a corner and set down this way (indicating) and looked out the window a good long while. Pearl did not deny it. * * * "Well, after Pearl set down by the window a few minutes, she told her if she knowed anything she ought to told it before she come out there. That's what Pearl told Mary Frances—

if she knowed anything she had done about any killing, why didn't she tell it before she come out to the county farm. That's what Pearl told Mary Frances."

The defendant objected to the questions, and moved to exclude the foregoing answers on the ground that it is illegal, incompetent, irrelevant, and immaterial. The court overruled the objections to the questions, and refused the motion to exclude the answers. An exception was reserved to each ruling of the court. This evidence is to be considered by the court and jury as tending to show her guilt as a confession in its nature by silence or by words or by acts, or by all three, when charged with the homicide or with being connected with it. Its weight and credibility are to be considered by the jury. Its admissibility was for the consideration of the court. It is clearly relevant evidence. The charges or statements were of such character as to have called for a denial by the defendant. The defendant states therein, "If she knowed anything she had done about any killing, why didn't she tell it before she come out to the county farm." Her silence, failure to deny the truth of the charges made, and the statements made by her are all relevant evidence. These were circumstances and acts and words for the jury to consider in passing on her guilt or innocence. The court committed no error in these rulings. Jackson v. State, 167 Ala. 44, 52 So. 835; Raymond v. State, 154 Ala. 2, 45 So. 895.

[4] The court did not err in refusing to give to the jury the general affirmative charge, with hypothesis, in favor of the defendant, requested by her in writing. The evidence was in clear conflict on all material issues; that of the state tending to show defendant unlawfully and with malice aforethought killed the decedent as charged in the indictment or aided and abetted in so killing him, and the evidence of defendant tended to show she did not kill or aid or abet in killing him, and knew nothing of it. The court properly under the evidence submitted to the jury the guilt or innocence of the defendant of the offense as charged in the indictment.

[5] Written charge No. 5 requested by the defendant was properly refused by the court. It does not express the policy or a principle of law applicable to the evidence in this cause.

The record is free from error, and the judgment is affirmed.

Affirmed.

All the Justices concur.