Richard Jay Jenkins, the appellant, was indicted for first and second degree rape and for indecent exposure. The respective sentences were fifteen years', ten years', and twelve months' imprisonment.
 I
Jenkins was charged in a three-count indictment with the first degree rape of Sheila R., the second degree rape of Laura S., and indecently exposing himself to Judy S. He contends that the joinder was prejudicial and denied him a fair trial. This Court agrees.
Jenkins was tried on the 19th of March, 1984. Alabama's Rules of Criminal Procedure concerning joinder, consolidation and severance became effective on March 1, 1983. The Attorney General argues that the three offenses were properly joined under Rule 15.3 (a)(i), A.R.Cr.P.Temp., allowing the joinder of offenses in an indictment if they "are of the same or similar character."
This ground of joinder has caused considerable difficulty because of the obvious danger of prejudice to the accused. C. Wright, Federal Practice And Procedure: Criminal 2d § 143 (1982):
 "Decisions applying the `same or similar character' test have generally failed `to provide criteria which would provide guidance as to the precise scope of this rule.' The view seems to be gaining acceptance, however, that the most important consideration is whether evidence of one offense would have been admissible at a trial of the other offense." Federal Practice at § 143.
Although there may exist some ground for arguing the joinder of the rape of Laura S. and the indecent exposure to Judy S., as the victims were sisters living in the same household, there is not even the contention that the rape of Sheila R. would have been admissible at the trial of the other offenses. Ex parte Killough,438 So.2d 333 (Ala. 1983).
The evidence does not support any assertion that the three sexual offenses were part of a common scheme or plan. Sheila R. was a married adult and was not related to Jenkins, although she knew him. At approximately 10:00 A.M. on September 16, 1982, Mrs. R. discovered Jenkins in her home. Jenkins forcibly raped her and then stated, "Well I reckon I showed him. I'll fix him", referring to the husband of Sheila R. Mrs. R. got a warrant for Jenkins in February of 1983 after she learned that he had sexually violated Laura S.
Laura S. was Jenkins' sister-in-law. Jenkins, Laura's sisters, her mother and her brother all lived in the same house. During the night of December 23, 1982, Jenkins went into thirteen-year-old Laura's room while she was sleeping, removed her "pajama suit" and had sexual intercourse with her. Laura admitted having sex with Jenkins in June and in February of 1982 in the house, and that he had "messed" with her "before then and after then." Although Laura testified that she tried to "push" Jenkins away, there was no evidence that the rape was forcible as in the case of Sheila R.
Judy S., Laura S.'s sister, was nine years old when Jenkins exposed himself to her "sometime" in 1982 in the garage attached to the house where they lived.
The joinder of the three offenses so prejudiced Jenkins as to deny him a fair trial. The inflammatory influence that the proof of each offense would almost inevitably exert on the others presents a situation too self-evident to be disregarded. Peoplev. Shapiro, 50 N.Y.2d 747, 409 N.E.2d 897, 431 N.Y.S.2d 422
(1980). Here, as in Shapiro, "[s]ince prosecutions for sex crimes, particularly ones regarded as deviate, tend in any event to invoke prejudicial preconceptions among jurors, the joinder of the indictments [offenses] created an impermissible risk. For the superficial closeness of *Page 1130 
the indictments [offenses] here, resulting largely from a common focus on the same kind of aberrant sexual practices, was likely to eclipse the very fundamental difference between them." 409 N.E.2d at 901, 431 N.Y.S.2d at 426. "That commonly held behavioral prejudices about those who perpetrate sex crimes, mistakingly assuming that the commission of one type of sex crime predisposes to another kind, are often unfounded has been well documented." Shapiro, 409 N.E.2d at 901, n. 2, 431 N.Y.S.2d at 426, n. 2. See also People v. Jackson, 77 A.D.2d 630,430 N.Y.S.2d 126 (1980).
The joinder prejudiced Jenkins because of the overwhelming likelihood that proof that he was guilty of one offense was used to convict him of another even though proof of that guilt would have been inadmissible at a separate trial. Federal Practice at § 222. None of the evidence in one case overlapped with that in another case.
In the motion for new trial, it was alleged that trial counsel was ineffective for failing to file a motion to sever. The District Attorney's response was:
 "We think we complied with the rules of Criminal procedure. All the things that he is bringing up, I think that Ms. Anderson [Defense Counsel] brought it up before trial about combining the charges. The Court ruled on them before it went to trial."
A reading of the record convinces this Court that the Assistant District Attorney and the trial judge treated Jenkins' motions as a request for a severance, regardless of how they were styled. For that reason we find that there was no waiver of the issue now presented and decided.
 II
Since this Court has determined that a severance should have been granted, we need not address the contention that trial counsel was ineffective with regard to raising this issue at trial.
 III
In his cross examination of defense character witnesses, the Assistant District Attorney bordered on, if he did not actually venture into, the realm of reversible error. See Veith v. State,48 Ala. App. 688, 697, 267 So.2d 480 (1972); C. Gamble, McElroy'sAlabama Evidence § 27.01 (5) (3rd ed. 1977). However, because of the error found in Issue I, we do not decide this issue but only advance this caution to forestall error on Jenkins' retrial.
The judgment of the circuit court is reversed and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.